**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

| | |
|---|---|
| **IN RE ETHICON, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION** | **Master File No. 2:12-MD-02327 MDL 2327** |
| **THIS DOCUMENT RELATES TO:** *Christine Heatherman and Terry Weaver v. Ethicon, Inc. et al.* **Case No. 2:12-cv-09245** | **JOSEPH R. GOODWIN U.S. DISTRICT JUDGE** |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT**

*INTRODUCTION AND SUMMARY*

Plaintiffs Christine Heatherman and Terry Weaver ("Plaintiffs") allege products liability claims against Defendants Ethicon, Inc. and Johnson & Johnson (collectively, "Ethicon") related to the Gynecare TVT ("TVT") product implanted in Ms. Heatherman on August 13, 2002. Ethicon moves for summary judgment on Plaintiffs' claims for manufacturing defect (Count II), strict liability – defective product (Count IV), common law fraud (Count VI), fraudulent concealment (Count VII), constructive fraud (Count VIII), negligent misrepresentation (Count IX), breach of express and implied warranty (Counts XI and XII), violations of consumer protection laws (Count XIII), and unjust enrichment (Count XV). Ethicon seeks dismissal of these claims because Plaintiffs lack evidence in support of key elements of those claims, and/or the claims are not proper under Colorado law.[1]

---

[1] Plaintiffs make a claim for "discovery rule and tolling," SFC ¶13, which should be dismissed as moot because it is not an independent claim, but rather a doctrine affecting commencement of the statute of limitations. *See* Colo. Rev. Stat. § 13-80-108(1); *In re Mentor Corp. OBTape Transobturator Sling Prods. Liab. Litig.*, No. 4:08-MD-2004, 2015 WL 5468713, at *2 (M.D. Ga. Sept. 16, 2015) (applying Colorado law).

Ethicon is not moving for summary judgment at this time on Plaintiffs' claims for negligence and gross negligence (Counts I and IV), strict liability – failure to warn (Count III), strict liability – design defect (Count V), negligent infliction of emotional distress (Count X), punitive damages (Count XVII), or loss of consortium (Count XVIII).[2]

## I. STATEMENT OF UNDISPUTED FACTS

On August 13, 2002, Ms. Heatherman elected to undergo surgery at Swedish Medical Center in Denver, Colorado to repair her pelvic organ prolapse (a non-mesh procedure) and to treat her stress urinary incontinence (with a TVT implant). *See* Ex. A, Short Form Compl. ("SFC") at 3-4 (ECF No. 1); Ex. B, Plaintiff Fact Sheet (redacted) ("PFS"), at 5; Ex. C, Heatherman 6/14/17 Dep. Tr. ("Heatherman Dep.") 19:19-26:21. During this surgery, Susan Peck, M.D. ("Dr. Peck") implanted TVT. Ex. D, Peck 7/27/17 Dep. Tr. ("Peck Dep.") 88:20-89:23; Ex. E, Operative Report (Peck Dep. Ex. 4).

Prior to the surgery, the risks of the surgery were discussed with Ms. Heatherman (including pain, infection, bleeding, injury to bladder, ureters, intestines, internal organs and blood vessels, other internal organs requiring further surgery, infertility, chronic pelvic pain, pain with intercourse, blood transfusion, changes in sexual response, depression, fistula (opening) between bladder and vagina, change in sensation of bladder, urinary incontinence, incomplete repair, percent increase in spasms of the bladder, fistula (opening) between rectum and vagina, rectal pain, change in sensation with bowel movements, constipation, rectal incontinence, and possible removal of abdominal tissue). Ex. D, Peck Dep. 71:15-76:4. Ms. Heatherman signed an informed consent attesting that she understood the risks and consented to the procedure. Ex. C,

---

[2] By moving for summary judgment on some issues and not others, Ethicon is not waiving or abandoning its right to assert its arguments on those issues under the applicable Federal or local rules of procedure at such other time or times as the remand or transferor court deems appropriate.

Heatherman Dep. 79:23-80:9, Ex. 15.

Dr. Peck has been board-certified in obstetrics and gynecology since 1994. Ex. D, Peck Dep. 18:5-16. At the time she implanted TVT in Ms. Heatherman, she had performed approximately 15-20 TVT procedures. Ex. D, Peck Dep. 30:3-18. She testified that, prior to Ms. Heatherman's surgery, she was aware that the risks of TVT surgery to treat stress urinary incontinence included chronic dyspareunia, chronic pain, vaginal scarring, urinary problems (including recurrence or failure), injury to organs and nerves, bleeding, wound complications, inflammation, neuromuscular problems, the need for revision surgery, foreign body response, mesh erosion and exposure, and the potential need for additional surgeries. Ex. D, Peck Dep. 81:15-88:19.

Dr. Peck implanted TVT in Ms. Heatherman on August 13, 2002. Ex. E, Operative Report (Peck Dep. Ex. 4). Plaintiff alleges that, as a result of the TVT, she has experienced vaginal scarring, chronic vaginal and pelvic pain, inability to have sexual intercourse, emotional stress, and extreme pain when sitting. Ex. B, PFS at 7. Ms. Heatherman first experienced symptoms of bodily injuries she claims were caused by the TVT in 2002, and first attributed her bodily injuries to the TVT mesh product in 2002. *Id.* In addition, Ms. Heatherman testified that she was told by Dr. Kenneth Petri in February 2004 that the TVT was causing the pain that she was experiencing at that time, resulting in the first of several mesh revision surgeries. Heatherman Dep. 113:3-114:18. In an effort to alleviate her pain, Dr. Petri performed a partial TVT excision in February 2004. *Id.*; Heatherman Dep. Exs. 24-25; Ex. B, PFS at 6. Ms. Heatherman alleges that she has many surgeries and procedures since the date of her TVT implant to address complications caused by TVT. *See* Ex. C Heatherman Dep. at 59:10-16, Ex. 12. Plaintiff Terry Weaver alleges a loss of consortium claim. Ex. A, SFC.

## II.     ARGUMENT AND AUTHORITIES

Pursuant to the well-established standard under Rule 56 of the Federal Rules of Civil Procedure, and as applied by this Court on numerous occasions (*e.g.*, *Bryant v. C.R. Bard, Inc.*, No. 2:13-CV-19730, 2017 WL 2350228, at *3 (S.D.W. Va. May 30, 2017) (Goodwin, J.)), there is no genuine issue of material fact on certain of Plaintiffs' claims and Ethicon is entitled to judgment as a matter of law.

**A.     Colorado Law Applies.**

Because Plaintiffs filed this case directly in MDL 2327, this Court should follow the choice-of-law rules of the place where Ms. Heatherman was implanted with TVT, which is Colorado. *Sanchez v. Boston Sci. Corp.*, No. 2:12-CV-05762, 2014 WL 202787, at *4 (S.D.W. Va. Jan. 17, 2014) (Goodwin, J.). Colorado follows the "most significant relationship" test, as outlined in section 145 of the Restatement (Second) of Conflict of Laws, in determining choice-of-law questions. *AE, Inc. v. Goodyear Tire & Rubber Co.*, 168 P.3d 507, 508 (Colo. 2007). Here, the implantation surgery that allegedly resulted in Ms. Heatherman's injuries took place in Colorado, Ms. Heatherman resided in Colorado at the time of the implant, and received medical care for her alleged injuries in Colorado. PFS at 5-6. Accordingly, Colorado's substantive law governs this case. *See In re Ethicon, Inc. Pelvic Repair Sys. Prods. Liab. Litig.*, No. 2:13-CV-01775, 2017 WL 3045496, at *2 (S.D.W. Va. July 18, 2017) (Goodwin, J.).

**B.     Plaintiffs Have No Evidence of a Manufacturing Defect.**

Plaintiffs have no evidence supporting their claim of a manufacturing defect (Count II), which should therefore be dismissed. Under Colorado law, "[t]he question in manufacturing defect cases is whether the product as produced conformed with the manufacturer's specifications." *Camacho v. Honda Motor Co.*, 741 P.2d 1240, 1247 (Colo. 1987); *accord, Wollam v. Wright Med. Grp., Inc.*, No. 1:10–cv–3104–DME–BNB, 2012 WL 4510695, *3 (D.

4

Colo. Sept. 30, 2012).

Plaintiffs have no summary judgment evidence that the TVT implanted in Ms. Heatherman failed to conform to Ethicon's specifications, and summary judgment is therefore proper on the manufacturing defect claim. *Wollam*, 2012 WL 4510695, *3-4 (granting summary judgment on manufacturing defect claim where there was no summary judgment evidence that a medical product was defectively manufactured).

In addition, Plaintiffs have not designated any expert testimony on the issue of manufacturing defect and summary judgment is therefore proper on their strict liability – manufacturing defect claim. In a complex case involving matters "beyond the ambit of common knowledge or experience of ordinary persons," the existence of a manufacturing defect must be proved with expert testimony. *See Hauck v. Michelin N. Am., Inc.*, 343 F. Supp. 2d 976, 988 (D. Colo. 2004) (rejecting the argument that "the plain fact the tire failed" was sufficient evidence to avoid summary judgment and dismissing manufacturing defect claim for lack of expert testimony). There is no evidence that the product implanted in Ms. Heatherman deviated from manufacturing specifications. No expert for Plaintiffs has opined that any possible deviation from the manufacturer specifications caused an injury to Plaintiffs. Plaintiffs' strict liability – manufacturing defect claim, as well as any other claims premised on allegations of a manufacturing defect, should be dismissed.

**C.     Plaintiffs' Breach-of-Warranty Claims Should Be Dismissed.**

Plaintiffs' breach-of-warranty claims (Counts XI and XII) fail for two independent reasons: (1) a three-year statute of limitations applies that is not subject to the discovery rule, and (2) Ethicon made no express warranties on which Ms. Heatherman or her implanting physician relied.

### 1.     Limitations bars all warranty claims.

Plaintiffs' express and implied warranty claims are barred by Colorado's strict three-year statute of limitations, which runs "when tender of delivery is made ... regardless of the aggrieved party's lack of knowledge of the breach." *See Curragh Queensland Mining Ltd. v. Dresser Indus., Inc.*, 55 P.3d 235, 239 (Colo. App. 2002); Colo. Rev. Stat. §§ 4-2-725(l)-(2), 13-80-101. Ms. Heatherman was implanted with TVT in August 2002, attributed her alleged injuries to TVT in 2002, and understood that TVT was causing her pain in 2004, but Plaintiffs did not file this suit until December of 2012. *See* Ex. A, SFC at 4; Ex. B, PFS at 5-7; Heatherman Dep. 113:3-114:18. Accordingly, Plaintiffs' express and implied warranty claims are untimely and should be dismissed. *See In re Trasylol Prods. Liab. Litig.-MDL-1928,* No. 08-MD-1928, 2013 WL 1192300, at *4-5 (S.D. Fla. Mar. 22, 2013) (applying Colorado law and dismissing warranty claims as untimely).

### 2.     Ethicon made no express warranty on which Plaintiff relied.

To state a claim for breach of express warranty, the plaintiff must prove (1) the existence of a warranty, (2) breach of the warranty, (3) the breach proximately caused the losses claimed as damages, and (4) defendant received timely notice of the breach. *Scott v. Honeywell Int'l Inc.*, 14-CV-00157-PAB-MJW, 2015 WL 1517527, at *3 (D. Colo. Mar. 30, 2015).

Plaintiffs' breach of express warranty claim (Count XI) also fails because Ethicon made no express warranties on which Ms. Heatherman (or her implanting physician) relied. Under Colorado law, an express warranty claim requires proof that the seller made an affirmation of fact or promise that relates to the goods and became part of the basis of the bargain. Colo. Rev. Stat. § 4-2-313(1)(a). Because Plaintiffs have no evidence of the existence of an express warranty upon which Ms. Heatherman or her implanting physician relied, summary judgment is proper. *See Anderson v. Heron Eng'g Co.*, 604 P.2d 674, 675-76 (Colo. 1979) (holding that sales

brochure's statement that product was "safe" could be an express warranty if and only if the brochure was seen or otherwise relied on by the purchaser when the product was purchased and that defendant could not be held liable for breach of an express warranty for failure to provide more complete or detailed warnings).[3]

Here, both Ms. Heatherman and her implanting physician, Dr. Peck, testified that they did not rely on any express warranty by Ethicon. Ex. D, Peck Dep. at 81:15-88:19, 162:16-20 (Dr. Peck was aware of the relevant risks prior to the surgery and did not review Ethicon's IFU in connection with recommending TVT for Ms. Heatherman); Ex. C, Heatherman Dep. 81:16-82:9 (Ms. Heatherman relied solely on her physicians). Ms. Heatherman also admits that she signed a consent form acknowledging that her TVT surgery had risks, including pain, infection, bleeding, injury to bladder, ureters, intestines, internal organs and blood vessels, other internal organs requiring further surgery, infertility, chronic pelvic pain, pain with intercourse, blood transfusion, changes in sexual response, depression, fistula (opening) between bladder and vagina, change in sensation of bladder, urinary incontinence, incomplete repair, percent increase in spasms of the bladder, fistula (opening) between rectum and vagina, rectal pain, change in sensation with bowel movements, constipation, rectal incontinence, and possible removal of abdominal tissue). Ex. D, Peck Dep. 71:15-76:4. Ms. Heatherman acknowledged that she understood the risks and consented to the procedure. Ex. C, Heatherman Dep. 79:23-80:9, Ex. 15. With no proof of reliance on express representations by Ethicon, Plaintiffs' express warranty claims fail. *See Anderson*, 604 P.2d at 676.

---

[3] Further, because Plaintiffs' warranty claims are really based on an alleged failure to disclose risks, the claims are improperly repackaged warnings claims subject to the learned intermediary doctrine, and they must be dismissed on that basis. *See infra*, Section II (D).

D.  **Plaintiffs' Fraud, Fraudulent Concealment, Constructive Fraud, Breach of Express and Implied Warranties, Violation of Consumer Protection Laws and Negligent Misrepresentation Claims Should Be Dismissed as Improperly Re-Packaged Warnings Claims.**

Plaintiffs' fraud, fraudulent concealment, constructive fraud, negligent misrepresentation, breach of warranty, and violation of consumer protection laws (Counts VI, VII, VIII, IX, XI, XII, and XIII) should be dismissed. The learned intermediary doctrine applies to each of these claims, making them indistinguishable from the failure-to-warn claim that Plaintiffs already assert. Accordingly, they are not cognizable as grounds for recovery separate from Plaintiffs' failure-to-warn claim.

As discussed above, Colorado applies the learned intermediary doctrine to failure-to-warn claims. *See O'Connell*, 250 P.3d at 1281. As this Court held in *Bellew*, a plaintiff cannot evade the learned intermediary doctrine by re-packaging her failure-to-warn claim under different doctrines. *Bellew v. Ethicon*, No. 2:13-CV-22473, 2014 WL 6886129, at *5-6 (S.D.W. Va. Nov. 24, 2014) (dismissing claims for fraud, fraudulent concealment, negligent misrepresentation, breach of warranty, and Arizona Consumer Fraud Act); *see also Huskey v. Ethicon, Inc.*, 29 F. Supp. 3d 736, 745 (S.D.W. Va. 2014) (awarding judgment to Ethicon on fraud, fraudulent concealment, constructive fraud, negligent misrepresentation, and breach of warranty claims under Illinois law). The reasoning is self-evident: "[i]f the learned intermediary doctrine could be avoided by casting what is essentially a failure to warn claim under a different cause of action … then the doctrine would be rendered meaningless." *Id.* (quoting *In re Norplant Contraceptive Prods. Liab. Litig.*, 955 F.Supp. 700, 709 (E.D. Tex. 1997). Because Plaintiffs' claims for fraud, fraudulent concealment, constructive fraud, negligent misrepresentation, breach of warranty, and violation of consumer protection laws are merely repurposed failure-to-warn claims, and the learned intermediary doctrine applies to

8

each one, they do not constitute separate grounds for recovery and so should be dismissed with prejudice.

**E.     Plaintiffs Cannot Bring a Claim Under the Colorado Consumer Fraud Act as the Law Expressly Excludes Activity that Falls Under a Statute Administered by a Federal, State, or Local Agency.**

Plaintiffs' claim under the Colorado Consumer Protection Act fails because that Act expressly exclude conduct that falls under a statute administered by a federal agency. To establish a claim under the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-113 (the "Act"), Plaintiffs must allege:

> (1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury.

*Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146-47 (Colo. 2003). The Act, however, expressly excludes activity related to "[c]onduct in compliance with the orders or rules of, or a statute administered by, a federal, state, or local governmental agency." Colo. Rev. Stat. § 6-1-106(1)(a). Here, the TVT product at issue in this case is regulated by the FDA; therefore, dismissal of this claim is required as a matter of law. *See Suarez v. United Van Lines, Inc.*, 791 F. Supp. 815, 817 (D. Colo. 1992).

**F.     Plaintiffs' Unjust Enrichment Claim Fails.**

In Colorado, unjust enrichment is a form of relief based on quasi-contract grounds or contract implied in law. *Redd Iron, Inc. v. Int'l Sales & Servs. Corp.*, 200 P.3d 1133, 1134 (Colo. Ct. App. 2008). A claim of unjust enrichment requires a showing that: "(1) at plaintiff's expense, (2) defendant received a benefit (3) under circumstances that would make it unjust for defendant to retain the benefit without paying." *Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1007

9

(Colo. 2008); *DCB Constr. Co. v. Cent. City Dev. Co.*, 965 P.2d 115, 119-20 (Colo. 1998). "If the elements of unjust enrichment are established, the party who has received the benefit is ordinarily required to make restitution in the amount of enrichment received," usually coextensive with the loss of the opposing party. *Redd Iron*, 200 P.3d at 1136.

Ms. Heatherman expressly alleges that the TVT medical device was implanted in her. S*ee* Ex. A, SFC at 3-4, and thus, she has received what her physician prescribed and her hospital presumably charged her for. Thus, Plaintiffs' claim here does not sound in contract or quasi-contract, but in tort, and her claim of unjust enrichment should be dismissed.

### G.     Plaintiffs' Fraudulent Concealment Claim Should Be Dismissed Because There Is No Duty To Disclose.

Plaintiffs' fraudulent concealment claims fails for the independent reason that Plaintiffs can show no evidence that Ethicon was under a duty to disclose information to them. The elements of a fraudulent concealment claim are: (1) concealment of a material existing fact that in equity and good conscience should be disclosed; (2) knowledge on the part of the party against whom the claim is asserted that such a fact is being concealed; (3) ignorance of that fact on the part of the one from whom the fact is concealed; (4) the intention that the concealment be acted upon; and (5) action on the concealment resulting in damages. *Kopeikin v. Merchants Mortg. & Trust Corp.*, 679 P.2d 599, 601 (Colo. 1984) (citation omitted). Crucially, Plaintiffs must also show that Ethicon had a duty to disclose material information. *Mallon Oil Co. v. Bowen/Edwards Assocs., Inc.*, 965 P.2d 105, 111 (Colo. 1998).

Under the learned intermediary doctrine Ethicon had no duty to disclose information to Ms. Heatherman. *See O'Connell*, 250 P. 3d at 1281-1282 (holding that drug manufacturer's duty to disclose risks was limited to prescribing physician, and did not extend to the patient). Because Plaintiffs have failed to produce any evidence to substantiate an essential element of their

claim for fraudulent concealment, that claim should be dismissed.

**H.     Plaintiffs' Constructive Fraud Claim Should Be Dismissed Because There Is No Fiduciary or Special Relationship to Support that Claim.**

"Constructive fraud is defined as a breach of duty that the law declares fraudulent because of its tendency to deceive, violate confidence, or injure public interests." *Scott Sys., Inc. v. Scott*, 996 P.2d 775, 780 (Colo. App. 2000); *see also Sec. Nat'l Bank v. Peters, Writer & Christensen, Inc.*, 569 P.2d 875, 880 (Colo. App. 1997). "Such fraud often arises if a special confidential or fiduciary relationship exists, which affords one party the power and means to take undue advantage of the other." *Scott*, 996 P.2d at 780; *Sec. Nat'l Bank*, 569 P.2d at 881. Because Plaintiffs were not in a fiduciary or special confidential relationship with Ethicon, the constructive fraud claim (Count VIII) is without merit and should be dismissed.

**I.     Plaintiffs' Strict Liability – Defective Product Claim Is Not Proper under Colorado Law.**

Plaintiffs' strict liability – defective product claim (Count IV) is improper and should be dismissed. There is no independent claim under Colorado law for "strict liability – defective product." Rather, Colorado recognizes "three general areas of the manufacturing process that lead to strict liability claims…: (1) physical flaws due to improper manufacture; (2) inadequacies in design; and (3) inadequate warnings concerning the hazards or proper methods for safe use." *Union Supply Co. v. Pust*, 583 P. 2d 276, 281 (Colo. 1978). Plaintiffs already assert claims for design defect, manufacturing defect, and failure-to-warn. Therefore, to the extent that Plaintiffs are attempting to re-package these claims into a non-existent cause of action under Colorado law, the claim for "strict liability – defective product" should be dismissed.

### III.     CONCLUSION

FOR THESE REASONS, Ethicon respectfully requests that the Court grant its Motion for Partial Summary Judgment, enter summary judgment dismissing Plaintiffs' claims for strict liability – manufacturing defect, strict liability – defective product, common law fraud, fraudulent concealment, constructive fraud, negligent misrepresentation, breach of express and implied warranty, violations of consumer protection laws, and unjust enrichment, and grant Ethicon any such other and further relief at law or in equity to which it may be justly entitled.

Respectfully submitted,

SCOTT DOUGLASS & McCONNICO LLP
303 Colorado Street, Suite 2400
Austin, Texas  78701
(512) 495-6300 – Telephone
(512) 495-6399 – Fax

By:     */s/ Stephen E. McConnico*
Stephen E. McConnico
Texas Bar No. 13450300
smcconnico@scottdoug.com
Sara Wilder Clark
Texas Bar No. 00794847
sclark@scottdoug.com
Robyn B. Hargrove
Texas Bar No. 24031859
rhargrove@scottdoug.com
John W. Ellis
Texas Bar No. 24078473
jellis@scottdoug.com

>BUTLER SNOW LLP
>1020 Highland Colony Parkway, Suite 1400
>Ridgeland, MS 39157
>Telephone: (601) 985-4523
>Fax: (601) 985-4500
>
>By: */s/ Christy D. Jones*
>    Christy D. Jones (MS Bar #3912)
>    christy.jones@butlersnow.com
>
>THOMAS COMBS & SPANN PLLC
>
>300 Summers Street, Suite 1380 (25301)
>P.O. Box 3824
>Charleston, WV 25338
>(304) 414-1807
>
>By: */s/ David B. Thomas*
>    David B. Thomas (W. Va. Bar #3731)
>    dthomas@tcspllc.com
>
>**ATTORNEYS FOR DEFENDANTS,**
>**JOHNSON & JOHNSON AND ETHICON, INC.**

### CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2017, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to CM/ECF participants registered to receive service in this MDL.

>*/s/ Stephen E. McConnico*
>Stephen E. McConnico